UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:21-CV-00410-GNS

JEFFERY JOHNSON                                                                    PLAINTIFF

v.

SGT. FULTON                                                                       DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Motion for Summary Judgment filed by Plaintiff (DN 51) and Defendant (DN 67).  The motions are ripe for adjudication.  For the outlined reasons, Plaintiff's motion is **DENIED**, and Defendant's motion is **GRANTED**.

## I.      SUMMARY OF THE FACTS

Plaintiff Jeffery Johnson ("Johnson") is incarcerated at Kentucky State Reformatory ("KSR").  He initiated this 42 U.S.C. § 1983 civil-rights action with a handwritten Complaint, which was subsequently amended to conform with the Court-supplied form.  (Compl., DN 1; Am. Compl., DN 8).  Johnson listed nine Defendants in the action.  (Am. Compl. 2-3).  Following initial review of the Complaint and Amended Complaint under 28 U.S.C. § 1915A, claims against all Defendants in their official and individual capacities were dismissed, except for individual capacity claims against Sergeant Jacob Fulton ("Fulton").  (Mem. Op. & Order 4-8, DN 30).  Two of Johnson's claims against Fulton proceeded:  a First Amendment retaliation claim and an Eighth Amendment claim for deliberate indifference to Johnson's safety.  (Mem. Op. & Order 5).

The surviving claims stem from the same alleged course of conduct.  During a search of Johnson's cell, Johnson avers that Fulton poured ice water on his bed and threw his clothes in the water.  (Compl. 2).  Johnson, believing this was a violation of his rights, filed a grievance against

Fulton.  (Compl. 2).  In response to the grievance, Johnson claims Fulton attempted to have him assaulted or killed by other inmates.  (Compl. 2; Am. Compl. 4-5).  To accomplish this objective, Fulton allegedly told two inmates that Johnson was a "snitch," had "helped law enforcement," and said false things about them.  (Compl. 2; Am. Compl. 4-5).

Presently, Johnson and Fulton have filed cross-motions for summary judgment.  Johnson argues "[a] number of court[s] have held that prison officials . . . calling a prisoner a snitch or otherwise informing other prisoners that he . . . has cooperated with law enforcement or has complained to prison staff about conduct of another prisoner constitutes deliberate indifference." (Pl.'s Mot. Summ. J. 1, DN 51).  Johnson proffers statements from George Wade ("Wade") and Kelvin Russell ("Russell")—the inmates Fulton purportedly attempted to induce into harming Johnson.  (Pl.'s Mot. Summ. J. Ex. A, DN 51-1; Pl.'s Mot. Summ. J. Ex. B, DN 51-2).  Meanwhile, Fulton contends Johnson failed to exhaust his administrative remedies and sufficiently state his claims; the admissible evidence does not support Johnson's claims; and Johnson's Complaint is frivolous.  (Def.'s Mem. Supp. Mot. Summ. J. 3-9, DN 67-1 [hereinafter Def.'s Mem.]).  Fulton provides an affidavit detailing his version of events.  (Def.'s Mot. Summ. J. Ex. A, DN 67-2).

## II.     STANDARD OF REVIEW

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The movant bears the burden of demonstrating the absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Thereafter, the burden shifts to the nonmoving party to present specific facts indicating a genuine issue of a disputed material fact essential to the case, beyond "some metaphysical doubt."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).  If the record as a whole could not lead the trier of fact to find for the

nonmoving party, the motion should be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). This standard operates likewise to cross-motions for summary judgment. *See Hamilton Cnty. Educ. Ass'n v. Hamilton Cnty. Bd. of Educ.*, 822 F.3d 831, 835 (6th Cir. 2016). "[T]he court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *McKay v. Federspiel*, 823 F.3d 862, 866 (6th Cir. 2016) (internal quotation marks omitted) (citation omitted).

The fact that Johnson is proceeding *pro se* does not lessen his obligations under Fed. R. Civ. P. 56. *See Maston v. Montgomery Cnty. Jail Med. Staff Pers.*, 832 F. Supp. 2d 846, 851-52 (S.D. Ohio 2011). "The liberal treatment of pro se pleadings does not require lenient treatment of substantive law, and the liberal standards that apply at the pleading stage do not apply after a case has progressed to the summary judgment stage." *Johnson v. Stewart*, No. 08-1521, 2010 U.S. App. LEXIS 27051, at *6-7 (6th Cir. May 5, 2010) (internal citation omitted) (citation omitted). Moreover, the Sixth Circuit has made clear that a party opposing a motion for summary judgment cannot rely on allegations or denials in unsworn filings, and a party's *pro se* status "does not alter his duty on a summary judgment motion." *Viergutz v. Lucent Techs.*, 375 F. App'x 482, 485 (6th Cir. 2010) (citation omitted). On the other hand, statements in a verified complaint based on personal knowledge may be comparable to affidavit statements for summary judgment purposes. *Weberg v. Franks*, 229 F.3d 514, 526 n.13 (6th Cir. 2000); *Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992).

### III.    DISCUSSION

#### A.    Johnson's Motion

Johnson seeks entry of summary judgment, based upon statements allegedly by Wade and Russell that Fulton told them Johnson was a "snitch" or "rat" and "has cooperated with law

3

enforcement." (Pl.'s Mot. Summ. J. 1-2). Johnson has tendered a statement supposedly from Wade stating that Fulton informed him that Johnson had reported Wade for "put[ting] a contract" on another inmate. (Pl.'s Mot. Summ. J. Ex. A). A statement purportedly from Russell is nearly identical to Wade's: that Fulton said Johnson had related that Russell "had a contract hit" on the same inmate. (Pl.'s Mot. Summ. J. Ex. B). Both believed Fulton wanted them to assault Johnson in response to these assertions.[1]

Courts may consider some forms of hearsay evidence when deciding a motion for summary judgment, but the evidence must still be admissible at trial. *Worthy v. Mich. Bell Tel. Co.*, 472 F. App'x 342, 343 (6th Cir. 2012) (citing Fed. R. Civ. P. 56(c); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009)). Affidavits regarding a summary judgment motion are "required to be sworn to by the affiant in front of an officer authorized to administer oaths and must be made on the affiant's personal knowledge." *Id.* (internal quotation marks omitted) (quoting *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 475 (6th Cir. 2002); Fed. R. Civ. P. 56(c)(4)); *see also Pollock v. Pollock*, 154 F.3d 601, 612 n.20 (6th Cir. 1998) ("An unsworn affidavit cannot be used to support or oppose a motion for summary judgment." (citation omitted)). Alternatively, 28 U.S.C. § 1746 provides a method for a declaration to act in place of the affidavit. Namely, the declaration must contain a statement indicating the declarant is verifying the information "under the penalty of perjury" and certifying the information as true and correct, in addition to a signature and date. *Id.*;

---

[1] Johnson also relies upon a statement from William Sartin ("Sartin"), another inmate at KSR. Johnson avers that Sartin is willing to testify about Fulton's actions following Johnson's grievance in addition to providing his unsigned, unnotarized statement, indicating Fulton allegedly made derogatory comments concerning Johnson and attempted to intimidate and humiliate Johnson. (Pl.'s Mot. Summ. J. 2; Pl.'s Mot. Summ. J. Ex. C, DN 51-3). Sartin's prospective testimony is unavailing, as Johnson's claim about these actions was dismissed in the Section 1915A review, on the basis that the allegations failed to state a claim upon which relief may be granted. (Mem. Op. & Order 8, DN 30) (citation omitted). Therefore, these allegations and Sartin's statement are not considered with respect to this motion.

*Worthy*, 472 F. App'x at 343-44.  "Statements that are not sworn in one of these two ways are not competent summary judgment evidence."  *Worthy*, 472 F. App'x at 344 (citation omitted).

The statements tendered by Johnson from Wade and Russell were not sworn before an authorized officer.  Thus, to be considered, the statements must meet the requirements of 28 U.S.C. § 1746.  Neither statement, however, satisfies the criteria.  Russell's statement is dated and may be signed; Wade's statement is not dated or signed.  Both statements lack verification of the information under the penalty of perjury and certification of the statement's veracity.  Therefore, neither statement can be considered in support of Johnson's motion.[2]  *See Worthy*, 472 F. App'x at 343-44.

Johnson has not demonstrated entitlement to judgment in his favor because a genuine issue of material fact remains, given the exclusion of Wade's and Russell's statements.  Johnson alleges Fulton attempted to have him assaulted or killed by other inmates.  (Compl. 2; Am. Compl. 4-5).  Fulton, through interrogatories and requests for admissions, denies these allegations and that he disclosed any information about Johnson.  (Def.'s Resp. Pl.'s Mot. Summ. J. Ex. A, at 1-2, DN 65-1; Def.'s Resp. Pl.'s Mot. Summ. J. Ex. B, at 1-2, DN 65-2).  In his summary judgment motion, Fulton attaches a notarized, signed affidavit claiming "[t]here is absolutely no truth" to Johnson's

---

[2] Johnson maintains the statements are "only a preamble" to testimony to be provided at trial.  (Pl.'s Reply Mot. Summ. J. 1, DN 66).  This is contrary to Johnson's motion, which, if granted, would eliminate the need for trial.  *See Plaisance v. Phelps*, 845 F.2d 107, 108 (5th Cir. 1988) ("The function of a jury is to try the material facts; where no such facts are in dispute, there is no occasion for jury trial.  Thus the right to trial by jury does not prevent a court from granting summary judgment."  (citations omitted)); *Bryant v. Kentucky*, 490 F.2d 1273, 1274-75 (6th Cir. 1974) ("[Fed. R. Civ. P. 56] is clearly intended to . . . allow the trial court to dispose of the case in advance of the hearing on the merits when . . . there is no genuine issue as to any material fact."  (citation omitted)); *Sartor v. Ark. Nat. Gas Corp.*, 321 U.S. 620, 627 (1944) ("Rule 56 authorizes summary judgment only where the moving party is entitled to judgment as a matter of law, where it is quite clear what the truth is, that no genuine issue remains for trial, and that the purpose of the rule is not to cut litigants off from their right of trial by jury if they really have issues to try."  (citations omitted)).

claims.  (Def.'s Mot. Summ. J. Ex. A, at ¶¶ 6-7).  Thus, Fulton provided specific facts demonstrating a genuine issue of a disputed material fact essential to this case. *See Matsushita*, 475 U.S. at 586-87.  When evaluating Johnson's motion on its merits and drawing all reasonable inferences in Fulton's favor, the record does not demonstrate Johnson's entitlement to summary judgment at this stage. *See Anderson*, 477 U.S. at 250; *McKay*, 823 F.3d at 866.  Therefore, Johnson's motion is denied.

### B.    Fulton's Motion

Fulton first contends that Johnson failed to exhaust his administrative remedies under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a).  (Def.'s Mem. 3-4).  Fulton concedes Johnson filed a grievance but claims it was "rejected"  because "it did not contain essential information, such as the date and location of the alleged event."  (Def.'s Mem. 4).  The missing information is vital to determine whether the grievance was filed within five business days of the incident.  (Def.'s Mem. 4).  Thus, Fulton asserts that Johnson failed to comply with applicable deadlines and properly exhaust his administrative remedies.  (Def.'s Mem. 4).

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983] . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  The Supreme Court, interpreting Section 1997e, has expressly stated:  "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007) (citing *Porter v. Nussle*, 534 U.S. 516, 524 (2002))  The exhaustion requirement emphasizes that "no one is entitled to judicial relief for supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Woodford v. Ngo*, 548 U.S. 81, 88-89 (2006) (internal quotation marks omitted) (citation omitted).  Failure to

exhaust administrative remedies is an affirmative defense, for which the defendant has the burden to plead and prove by a preponderance of the evidence. *Jones*, 549 U.S. at 216.

Exhaustion of administrative remedies is required for "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532 (citation omitted). To satisfy this prerequisite, an inmate must "properly exhaust" his remedies through strict compliance with the prison's grievance process. *Woodford*, 548 U.S. at 93-94; *id.* at 90-91 ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." (footnote omitted)). Thus, to establish exhaustion, the inmate must present his grievance "through one complete round" of the established administrative process. *Thomas v. Woolum*, 337 F.3d 720, 733 (6th Cir. 2003), *overruled in part by Woodford*, 548 U.S. at 87. The "prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). "[A]n inmate does not exhaust his administrative remedies unless and until he pursues all avenues of appeal that are available within the prison grievance system." *Thomas*, 337 F.3d at 737 (Rosen, J., dissenting in part) (citations omitted). When a claim is not properly exhausted under the PLRA, dismissal is appropriate. *Burden v. Price*, 69 F. App'x 675, 676 (6th Cir. 2003).

Kentucky Department of Corrections Policies and Procedures ("CPP") 14.6 details the inmate grievance procedure. *See 14.6 Inmate Grievance Procedure*, Ky. Dep't Corr., https://corrections.ky.gov/About/cpp/Documents/14/CPP%2014.6%20-%20Grievance%20-%20 Effective%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.pdf (last visited Oct. 11, 2022) [hereinafter CPP 14.6]. A grievance about "a personal and specific incident" must "be filed within five (5) business days . . . ." CPP

14.6(II)(J)(1)(a)(2).  Moreover, "[a] grievance shall pertain to one issue.  Separate grievances shall be filed for separate issues and unrelated incidents."  CPP 14.6(II)(J)(1)(a)(3).  The grievant "may list a reasonable number of inmate or staff witnesses or include statements from those who may have relevant information", which list must be submitted with the grievance.  CPP 14.6(II)(J)(1)(a)(6)-(7).  Non-compliance with the policy may lead to rejection of the grievance; the grievance is still logged, but its rejected status is noted.  CPP 14.6(II)(J)(1)(a)(13).

After a grievance is properly filed, an informal resolution is attempted.  CPP 14.6(II)(J)(1)(b)(1).  If unsatisfactory, a written request for a hearing may be filed.  CPP 14.6(II)(J)(1)(b)(8).  A Grievance Committee Hearing conducts such hearings and serves as the fact-finding body for staff conflict grievances.  CPP 14.6(II)(J)(2)(a)-(b)(1).  The grievant may appeal directly to the Warden and bypass the hearing by written request or may appeal an unsatisfactory recommendation to the Warden.  CPP 14.6(II)(J)(2)(b)(3), (k).  Finally, if unsatisfied with the Warden's decision, the grievant may appeal to the Commissioner.  CPP 14.6(II)(J)(3)(d).

Johnson attached a copy of his grievance communications to his Complaint and Amended Complaint.  (Compl. Ex. A, DN 1-1; Am. Compl. Ex. A, DN 8-1).[3]  The correspondence contains information from grievances # 21-0023 and # 21-0167.  (Compl. Ex. A; Am. Compl. Ex. A).  Much of the correspondence relates to # 21-0023, and appeals pursuant to CPP 14.6, which pertain to the search of Johnson's cell and the allegations of water being poured on Johnson's bed.  (Compl. Ex. A, at 4-12; Am. Compl. Ex. A, at 5-11).  Information from this grievance is not pertinent to

---

[3] The exhibits to the Complaints are nearly identical, but three documents differ:  Johnson's Complaint includes an appeal to the Commissioner and her response, and the Amended Complaint contains a letter from Ombudsman John Dunn.  (Compl. Ex. A, at 11-12; Am. Compl. Ex. A, at 11).

Johnson's surviving claims.  The relevant grievance is # 21-0167, which details allegations of Fulton speaking with Russell and Wade about Johnson.  (Am. Compl. Ex. A, at 2-3).

Grievance # 21-0167 contained statements displaying several layers of hearsay within hearsay.  For example, based on information from Russell, Johnson stated, "Fulton had approached Kelvin Russell [and] told him he was in the capt[a]in's office with [Johnson, and Johnson] told the capt[a]in that Kelvin Russell had put a contract on inmate VEA . . . ."  (Am. Compl. Ex. A, at 2).  Johnson's grievance did not contain a list of witnesses or statements of any witnesses.  Johnson reported that his mother called the Kentucky Attorney General and State Police on February 25, 2021, to protect Johnson from Fulton, but that is the only date mentioned.  (Am. Compl. Ex. A, at 2).  Johnson did not provide any information about when Fulton could have spoken with Russell or Wade or when Johnson learned of the purported statements.  The Grievance Coordinator reviewed and rejected # 21-0167, and a notice was issued to explain the reasons for the rejection, including those previously observed.  (Am. Comp. Ex. A, at 1).

Considering all the evidence, Fulton satisfies his burden of establishing Johnson's failure to exhaust his administrative remedies before initiating this action.  *See Jones*, 549 U.S. at 216. The burden now shifts to Johnson to produce specific facts indicating a genuine issue of material fact regarding exhaustion.  *See Matsushita*, 475 U.S. at 586-87.  There is no indication that Johnson attempted to rectify these errors or to appeal the rejection, nor was any evidence or affidavits provided to this effect.  Plainly, Johnson did not comply with CPP regulations and deadlines, so his administrative remedies were not properly exhausted.  *See Woodford*, 548 U.S. at 90-91, 93-94.

Johnson presents a vague allegation that CPP 14.6 is fraudulent, unconstitutional, facially void, and violates KRS 13A.130, as it is unapproved and unreviewed by the Kentucky legislature.

(Pl.'s Reply Mot. Summ. J. 2; Pl.'s Resp. Def.'s Mot. Summ. J. 3, DN 68).  This argument was not raised at any prior point, and Johnson's surviving claims do not relate to the constitutionality of the CPP.  A party cannot expand his claims to assert new legal theories in response to a motion for summary judgment, nor can a party make novel arguments for the first time in its reply. *Bridgeport Music, Inc. v. WB Music Corp.*, 508 F.3d 394, 400 (6th Cir. 2007) ("To the extent [the plaintiff] seeks to expand its claims to assert new theories, it may not do so in response to summary judgment or on appeal."  (citations omitted)); *Sanborn v. Parker*, 629 F.3d 554, 579 (6th Cir. 2010) ("[A]rguments made to us for the first time in a reply brief are waived.  (citation omitted)).  Therefore, these contentions are not considered.

Thus, there is no genuine issue of material fact regarding Johnson's failure to exhaust his administrative remedies under the PLRA, and Fulton has demonstrated entitlement to judgment as a matter of law.  Because the Court is granting summary judgment to Fulton based upon Johnson's failure to exhaust, there is no need to address the remaining merits-based arguments.

## IV.  CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** as follows:

1.    Plaintiff's Motion for Summary Judgment (DN 51) is **DENIED**.

2.    Defendant's Motion for Summary Judgment (DN 67) is **GRANTED**, and Plaintiff's claims are **DISMISSED WITH PREJUDICE**.

3.    The Clerk shall strike this matter from the active docket.

Greg N. Stivers, Chief Judge

United States District Court

October 31, 2022

cc:    Plaintiff, *pro se*
        counsel of record

10